Shauck, J.
The judgment of the circuit court is said to he correct in view of the constitutional guaranties of the right of the individual to acquire, possess and enjoy property with all of its incidents and attributes, and the duty of the judicial department to shield the right from legislative encroachment. By counsel for the plaintiff in error it is said to be erroneous because it denies effect to a legitimate exercise of the police power by the legislature. The principles to be applied to the subject have been often stated with clearness and authority, whatever difficulty may be experienced in their application to particular acts of legislation. To those principles it is necessary to recur, since legislation of the character of that which is here questioned is of recent origin and the acts considered in the cases to which *214 our attention has been called and the constitutional provisions involved present substantial differences from those which are involved in the present inquiry. Originality in the statement of those principles would neither serve convenience nor promote accuracy. One of the guaranties invoked and its only limitation are concisely stated in the nineteenth section of the bill of rights: “Private property shall ever be held inviolate but subservient to the public welfare. ’ ’ Attention is also invited, and it is due, to the familiar provisions of the first and second sections of the bill of rights confirming the right of “acquiring, possessing and protecting property,” and declaring the equal protection and benefit of government to be one of the purposes for which it is instituted. The terms of the instrument compel the conclusion often stated that the holding of private property, its acquisition and its use are subservient only to the welfare of the public. While it is not required that every act which restricts the enjoyment of property must affect every member of society, it is required that every such act must be founded upon a reason of a public nature and that the act must affect all who are within the reason for its enactment. The conception that the legislature has creative power, by whose general ■exercise it may confer rights upon some without ■despoiling others, being without foundation in reason, is without rational limitation. That conception appears as the prompting of all legislation which is solicited and obtained by classes to aid them in the rivalries of business. Whatever may be thought of some legislation in which there is general acquiescence, no one would considerately say that these provisions of the constitution permit legislative participation in such rivalries. It would be diffi *215 cult, it might he impossible, to reconcile all the reported cases concerning the extent to which the sufficiency of reasons for legislative discrimination may be reviewed by the courts, but from numerous discussions of the subject some propositions may be deduced with confidence. For every restriction upon the enjoyment and use of property there must be substantial reason of a public character, and in order that the provisions of the constitution may have their intended operation, the conclusion of the general assembly in that regard is subject to review by the courts. If a restriction is placed upon the alienation of property, it must be for the benefit of either the entire body of the people, or, at least, of all who are within the reason of the restriction. A distinction-sometimes thought important between property in lands and in chattels upon the ground that the former is derived from the state, will at least justify the conclusion that legislative control over chattels is not greater than over lands. The express limitations which the constitution imposes upon the legislature apply to the exercise of powers which are truly legislative in character, and since none but legislative power is committed to it, the exercise of that power is also confined within all the limitations which are suggested by its nature. That this act is in conflict with some of these assurances to the owners of property will become obvious upon analysis of its provisions. It in terms makes every sale in bulk of stocks of merchandise absolutely void, unless the parties to the transaction comply with every one of the requirements stated severally in the six subdivisions of the first section. Even those requirements which are made of the seller are impossible of performance in every instance when he does not know *216 who are all of his creditors and the precise amount of his indebtedness to them. The act by its terms took effect upon its passage and it applies to every stock of merchandise however long it or any portion of it may have been in the seller’s possession. And. the third subdivision requires of him the delivery to-the purchaser of correct books or original invoices-from which the cost price of the merchandise soletean'be ascertained, although he may have neither’ data nor recollection to make compliance practicable.. The fourth subdivision assumes to impose upon both the seller and the purchaser the indispensable duty of making “a full .detailed inventory, showing the-quantity and the cost price to the seller of each article to be included in the sale, or other disposition.” Circumstances which would frequently render it impossible for the seller to comply with this, requirement in cost price have already been suggested, and nothing more than a suggestion can be-necessary. As to the purchaser it is quite obvious that he would not, in any case, have or be able to-gain the knowledge which would be indispensable to-compliance on his part with this requirement. Nor is the act relieved by the sixth subdivision which requires that the purchaser shall at least five days before the sale give notice of such proposed sale, or other disposition, and the cost price and the price to be paid therefor by the purchaser, to each of the seller’s creditors of whom the purchaser obtains the-knowledge by the list furnished by the seller, or can, by the exercise of reasonable diligence, gain knowledge Grammatically construed, this subdivision requires the purchaser to give notice to creditors of the seller of whom he can gain knowledge by the exercise of reasonable diligence, though they may not. *217 be named in tbe list furnished. It does not abate the' force of the previous requirement that the list of the seller’s creditors must be complete, and when it is-observed that the act makes all such sales fraudulent- and void unless all of the six requirements are met, it becomes obvious that compliance with the -sixth requirement would not cure a failure to comply with any of the others.
Applying the familiar and unquestioned rule that-the validity of an act is to be determined by its practical operation and not by its title or declared purpose, this act, under the guise of preventing fraud in such sales, prohibits them altogether, and thus places, upon the enjoyment of property an important restriction which no public interest requires and which the constitution therefore forbids. One who challenges the soundness of this conclusion should be prepared to maintain the validity of an act expressly forbidding sales of stocks of merchandise .in bulk. By the act the legislature has attempted to discriminate unwarrantably among debtors and creditors. It does, in terms, apply to sales in bulk by wholesale as well as by retail dealers in merchandise. But conceding, for present purposes, that when reasons for legislative discrimination exist, their sufficiency is to-be determined finally by the legislature, no reason is-suggested by counsel, nor does any occur to us for a legal discrimination in the relation of debtor and creditor between those who come into that relation with respect to the purchase and sale of merchandise and those between whom it exists with respect to chattels in general. Although the act applies to all the creditors of the seller it applies to those only who are creditors of the owner of a stock of merchandise, and thus an unreasonable burden is im *218 posed upon a limited class of debtors for the supposed benefit of a limited class wbo are their creditors. The fact that within six years the legislatures of twenty states have passed acts upon this subject is urged by counsel for the plaintiff as indicative of unusual and increasing frauds in sales of this character. If inquiry into the genesis of this legislation were practicable, it' might show that it has resulted from the activity of a class of creditors to secure advantages not offered by the law to creditors generally because not thought to be consistent with the public interests. The course of adjudication and legislation upon the subject indicates that the vendor’s lien upon lands though existing in favor of all vendors, is no longer regarded with favor because of its tendency to mislead general creditors of the purchaser with respect to his solvency. The present act, considering that the benefited creditors are chiefly those from whom the seller has purchased, in effect creates a vendor’s lien upon a limited class of chattels without any public reason for the discrimination.
A conclusion in favor of the validity of the act is not aided by suggested analogies. The act requires no notice to be lodged with a public officer by the creditor of the seller, stating the amount of the claim and requiring that a proposed purchaser shall b,e charged with constructive knowledge of notice so given. The purpose in view of the enactment of this statute bears no resemblance to that of statutes upheld in numerous cases decided in this court forbidding the use of ingredients in articles of food which are used for the sole purpose of deceiving the public as to their true character, nor to those stat *219 utes which utterly interdict the use of that whose sole purpose may be the accomplishment of fraud.
If the reasoning of the courts in the cases cited, affirming the validity of statutes upon this genera! subject, were accepted as sound, the cases would be plainly distinguishable by essential differences in the provisions of the statutes, and, in one instance at least, by a difference in the constitutional provisions involved. In addition to these differences there appears, in at least one of the cases cited, a concession to the view that constitutional limitations are but admonitions to the legislative department. That upas was cut down a century ago, but now and then a sprout rises from its ancient root. Consideration of other objections to the act does not appear to be necessary.

Judgment affirmed.

Spear, C. J., Davis, Price, Crew and Summers, JJ., concur.